## Relf *versus* The Bank of Mobile.

1. Though a creditor who orders from his debtor goods owned by the latter is not bound to accept a draft in favor of a third party for the amount, and may set off against the price the vendor's indebtedness to him; yet when the creditor sends his debtor to a distant market to purchase goods on his account and does not provide the funds for the purpose, and the latter executes the commission, the law implies a promise by the creditor to pay the seller for the same in the usual course of business, and the creditor cannot set off against the price the indebtedness of his agent.

2. It was within the scope of the authority of such an agent, when authorized to purchase cotton, to draw upon the principal in favor of a bank which advanced the money to pay for the cotton. If the principal meant to disaffirm the act of his agent in making such a draft he should have refused to receive the cotton; but if he has received and appropriated it he is bound to accept and pay the draft.

3. It was not material whether the authority to purchase the cotton was or was not exhibited to the bank, before the draft was cashed by it; the power of the agent to draw depended on *his possession* of such authority and not on his *exhibition* of it.

4. The rejection, when offered on part of the creditor in a suit by the bank against him on the draft, of former correspondence between the principal and agent as to previous purchases of cotton, showing *express power* then given to draw upon the creditor, was not material.

THIS case came up from the Nisi Prius.

It was an action on the case, in *assumpsit*, by the Bank of Mobile *v.* Charles P. Relf, upon a draft for $1851.73, dated February 13, 1849, drawn by C. C. Hazard on Relf, to the order of J. M. English, cashier, who endorsed it to the Bank of Mobile.

In the first count of the declaration it was alleged, that, in consideration that C. C. Hazard would purchase 50 bales of cotton

for and on account *of the bank*, and would consign them to Relf, the latter agreed to pay for them by accepting and paying such draft as Hazard might draw at sixty days after sight, &c.    That Hazard drew on Relf in favor of English, cashier, who endorsed to the bank.

2d count. That on 13th February, 1849, Hazard drew on Relf to order of English, cashier, who endorsed to the bank, who presented to Relf, who *ought to have accepted ;* that the bank, on the faith of such duty, had procured and discounted the draft, &c.

Under the common counts the bank claimed, 1. For money paid on purchase or discount of Hazard's draft; 2. For money paid for use of Relf, and applied to the purchase or payment of cotton ; 3. For money lent and advanced by the bank to Relf.

The question was whether the defendant was liable for the draft in suit, which was drawn under the following circumstances :—

On the part of the plaintiff there was given in evidence a letter by Relf, the defendant, to C. C. Hazard, dated at Philadelphia, January 18, 1849, in which there was an acknowledgment of the receipt of a letter of Hazard of the 2d inst., in which Hazard was requested that if he could procure L'pool fair, at 6 cents, or less, to ship to Relf 150 bales by first vessel.    That if he could not buy at that price, he was at liberty to ship 50 bales at lowest price obtainable.    The letter did not contain any authority to draw for the amount.

There was next given in evidence a letter of same date, viz., 18th January, 1849, by Hazard to Relf, acknowledging the receipt of Relf's letter of 30th ult., with the enclosure, which he stated was all right, and which he would "make right in another sense as soon as possible."    He added that it would be gratifying to him to *work out* a portion of his indebtedness to Relf, if the latter would afford him the opportunity of so doing.

It appeared that the letter of 30th December, 1848, enclosed an account current between Relf and Hazard, stating a balance of $725.71 by Hazard to Relf, and expressing the trust that Hazard will be able to settle the balance, and that they may do more than sufficient business together the then season to repay Hazard the loss referred to.

Next was offered in evidence a letter from R. J. Tardy, dated Mobile, February 10, 1849, addressed to Relf, stating that at the request of Hazard he notified him (Relf) that he had purchased 50 bales of cotton for account of Relf, and engaged the freight, &c.

Next was given in evidence a letter from Hazard to Relf, dated Mobile, 13th February, 1849, stating that he had the 50 bales bought, and that he was compelled *to draw on him*.    Next was offered *the invoice* of the 50 bales sent by Hazard to Relf, the amount of cotton, insurance, charges, and commission of $2\frac{1}{2}$ per cent., being therein stated to be $1860.08.

[Relf v. Bank of Mobile.]

Next a letter from Hazard, of 14th February, 1849, accompanying the *bill of lading*, and stating a small error in the amount of the draft, owing to a mistake as to the discount.

Next was offered the bill of exchange *in controversy*, drawn by Hazard on Relf, Philadelphia, dated Mobile, 13th February, 1849, for $1851.73, payable sixty days after sight, to the order of J. M. English, Esq., cashier, "which charge (with or without further advice) to the account of cotton per Edinburg."

Relf received the cotton, and was willing to accept and pay the draft for the amount less $743.13, claimed as due to him by Hazard.

In addition to the letters and papers before referred to, there was also given in evidence on the part of the plaintiff, a deposition of *Hazard*, in which it was stated, that regarding the purchase of the cotton as having been made strictly for Relf's account, he addressed a letter to Emanuel, then a director of the Bank of Mobile, stating the purchase of the cotton under Relf's orders, "*his letter containing which Mr. E. had seen*," and requesting his influence with the bank for the purchase of the bill in order to enable him to pay for the cotton. To the admission of this part of the deposition, exception was taken; and also to another part, in which he expressed his expectation that Relf, under Hazard's previous propositions, would pass to his account the amount of the *commission*, which was not included in the bill.

The deposition of Tardy was also received, as to which exception was taken to the statement that when Hazard gave him the order for the purchase of the 50 bales under Relf's letter, he assured him that when the purchase and shipment would be completed, that he (Hazard) would draw on Relf for costs and charges, *and pay the amount to Tardy.*

Exception was also taken to the admission of evidence by J. M. English, the cashier of the Bank of Mobile, that in such capacity he received the bill in question, which, he stated, was purchased by the bank through a committee of directors on the 13th of February, 1849. Also, to testimony by English that he knew nothing of Hazard's purchases of cotton, further than *that bills*, when taken of Hazard by the Bank of Mobile, were, as far as he recollected, always under assurances of being against cotton, ordered or authorized by the parties.

On the part of the *defendant* were offered in evidence letters from Hazard to plaintiff in 1848 and 1849, and also one in 1843, from which it appeared that, previous to the date of the draft in controversy, cotton had been purchased by Hazard for Relf; and further offered to show that in all previous transactions there was given *express power to draw bills.*

This evidence was rejected.

ROGERS, J., expressed the opinion that the plaintiff was entitled

2 o 2

[Relf *v.* Bank of Mobile.]

to a verdict; but, with the view of bringing the question before the Court, he instructed the jury to find a special verdict as directed; and the jury found for the plaintiff $1951.86, being the amount of the bill with interest from April 25, 1849; also, that there was due from Hazard to defendant $743.13, the credit being subject to the opinion of the Court upon the whole case. Judgment to be entered as the Court may direct.

March 25, 1850, it was ordered that judgment be entered for the plaintiff for $1951.86.

It was assigned for error that the Court erred in admitting in evidence, 1. The letters of Hazard to defendant of January and February, 1849; 2. The letter of Tardy; 3. The portions of the deposition of Hazard excepted to; 4. To the portion of Tardy's deposition excepted to; 5. The evidence of English to show that the bank was the real owner of the bill; 6. To the part of his deposition excepted to; 7. In *rejecting* the evidence, 1. That in all previous dealings between the parties there was express power given to draw; 2. In directing the jury to find for the plaintiff; 3. In entering judgment on the verdict.

*Campbell,* for Relf, the defendant in the suit.—Reference was made to the case of U. S. *v.* Lyman, 11 *Law Rep.* 156, for the position that, if a note be payable to A. B., cashier, or order, parol evidence is inadmissible to prove that the bank, of which A. B. was cashier, was the real owner or party in interest; and that such a note is not evidence in an action for money had and received, or on an account stated, brought in the name of the bank.

The evidence of previous dealings between Relf and Hazard was admissible.

It was further contended that, in order to recover, the bank should have shown an authority in Hazard to draw, and that such authority was exhibited to and acted upon by *the bank,*—which it was alleged was not shown on the trial.

*J. Fallon,* for the bank.

The opinion of the Court was delivered, April 18, by

WOODWARD, J.—A creditor, who orders goods from his debtor, which the latter owns and has on hand to sell, is not bound to accept a draft in favor of a third party for the price of the goods, and may set off against the price the vendor's indebtedness, on the ground of mutual dealings. But when a creditor sends his debtor into a distant market, as his agent, to purchase goods on his account, and the debtor executes the commission, the law implies a promise on the part of the creditor to pay the seller of the goods in the usual course of business, and he cannot set-off against the price the indebtedness of his agent. To permit the set off in

such a case, would be to pay one man for another man's property. Relf's letter of the 18th January, 1849, constituted Hazard his agent for the purchase of 50 bales of cotton in the Mobile market at current rates, and whilst Hazard kept within the circle of an agent's duties, his acts bound his principal. Was the draft of 13th February within the scope of his authority? It was quite in the usual course of business, and in conformity with the practice of the parties. Authorized to purchase cotton and ship it, but furnished with no means for the purpose, Hazard's negotiations with the bank must be regarded as in the line of his authority, for they were indispensable to the execution of the order. On the request of the defendant's agent, the bank furnished the means, and became thus virtually the seller of the cotton. A draft on the cotton in favor of the bank was no more beyond the agent's authority, and no more subject to equities existing between him and his principal, than a draft in favor of the merchant who furnished the cotton would have been. The idea of set-off springs from the erroneous conception that this was a dealing between the defendant and his agent, instead of a dealing, through an authorized agent, between the defendant and the bank.

It is objected that the defendant's letter was not shown to the bank. But this is immaterial. An agent's authority to bind his principal depends on his *possessing*, not on his *exhibition* of credentials that are clear. If the bank were content to purchase the draft on Hazard's representations of his authority, and it turns out that he had authority to draw, the defendant has no reason to complain that the bank had not more evidence than was sufficient to satisfy them of the agent's authority.

The duty of the defendant to accept the draft results out of his agent's authority to draw it. Especially clear is that duty in view of the fact that the agent gave prompt notice of the purchase and shipment of the cotton and of the draft, and forwarded the bill of lading, all of which the defendant received without protest or disaffirmance before the draft was presented. The purchase, the shipment, and the draft were connected and dependent acts; and that Relf did not mean to disaffirm them is shown by his subsequent receipt of the cotton, and appropriation of it against a demand of redelivery. But if he meant to affirm the purchase and consignment, he was bound to accept the draft. He might not affirm so much of his agent's conduct as was beneficial to himself, and disaffirm the rest, when all of it was according to instructions.

On the whole, we see not an inch of ground for the defence to rest on, and we think the judge was right in directing a verdict for the plaintiff.

There is nothing in the exceptions to evidence which demands a reversal of the judgment, and it is accordingly affirmed.

Judgment affirmed.